**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **BRANDY STAHL, ACTING ON BEHALF OF C.S., A MINOR, AS HER PARENT AND NEXT FRIEND,** ) | |
| C/O KOHRMAN JACKSON & KRANTZ ) | CASE NO.: |
| 1375 EAST NINTH STREET, 29TH FLOOR ) | |
| CLEVELAND, OHIO 44114 ) | JUDGE: |
| ) | |
| **AND** ) | |
| ) | **COMPLAINT** |
| **BRANDY STAHL,** ) | **(Jury Demand Endorsed Hereon)** |
| C/O KOHRMAN JACKSON & KRANTZ ) | |
| 1375 EAST NINTH STREET, 29TH FLOOR ) | |
| CLEVELAND, OHIO 44114 ) | |
| ) | |
| **AND** ) | |
| ) | |
| **KENNETH STAHL,** ) | |
| C/O KOHRMAN JACKSON & KRANTZ ) | |
| 1375 EAST NINTH STREET, 29TH FLOOR ) | |
| CLEVELAND, OHIO 44114 ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| **TIFFIN CITY SCHOOLS BOARD OF EDUCATION,** ) | |
| 244 SOUTH MONROE ST. ) | |
| TIFFIN, OHIO 44883 ) | |
| ) | |
| **AND** ) | |
| ) | |
| **HAIYUAN ("HARRY") GAO,** ) | |
| 5953 LOTHIAN STREET ) | |
| DUBLIN, OH 43016 ) | |
| ) | |
| **AND** ) | |

1

|  |  |
|---|---|
| **DAVID ALVARADO,** | ) |
| 2500 NORTH TOWNSHIP ROAD | ) |
| TIFFIN, OHIO 44883 | ) |
|  | ) |
| AND | ) |
|  | ) |
| **TIMOTHY MURRAY,** | ) |
| 612 WEST YEASTLING STREET | ) |
| GIBSONBURG, OHIO 43431 | ) |
|  | ) |
| AND | ) |
|  | ) |
| **JOHN DOES 1-3** | ) |
| ADDRESSES UNKNOWN | ) |
|  | ) |
| Defendants. | ) |

Plaintiffs, C.S. ("*C.S.*"), by and through her next friend, Brandy Stahl, Brandy Stahl ("*Mrs. Stahl*") individually, and Kenneth Stahl ("*Mr. Stahl*"), file this Complaint against Defendants Tiffin City School District Board of Education (the "*Board*" or "*District*"), which operates Tiffin City Schools, Haiyuan ("Harry") Gao ("*Gao*"), David Alvarado ("*Alvarado*"), Timothy Murray ("*Murray*"), and John Does 1-3 and state as follows:

## INTRODUCTION

1. This action arises from the District's indifference toward and cover up of longstanding harassment, torment, and psychological cruelty imposed by a Columbian High School ("*Columbian*") Chinese teacher, Gao, toward his female students. The District's indifference led to C.S. becoming one of Gao's numerous victims during her ninth-grade year, from August 2024 until it reached a boiling point in March 2025, when she was forced

2

to finish the school year from home due to uncontrollable, stress-induced seizures she developed during Gao's misconduct.

2.      In a time that should have been full of new, transformative experiences and personal and educational growth, C.S.'s first year of high school was marred by harassing remarks, sexualized innuendos, educational barriers on the basis of sex, improper touching, and retaliation that weaponized the male student body when C.S.—and eight other female students—gathered the courage to report Gao' discrimination.

3.      The experience C.S. endured during her freshman year led to the development of Psychogenic Non-Epileptic Seizures (PNES)—induced by stress—in addition to being diagnosed with PTSD and Adjustment Disorder with Anxiety. In addition, C.S. suffered from ongoing nightmares and, tragically, suicidal thoughts, underscoring the profound and detrimental impact the District's deliberate indifference and Gao's discrimination and harassment had on her.

4.      Accordingly, Plaintiffs bring the following claims resulting from Defendants' coverup, abusive treatment, and continued employment despite the knowledge of Gao discriminating against students:

> ➢ Violations of the Fourteenth Amendment's Rights to Due Process and Equal Protection (against Gao, Murray, Alvarado, the District, and John Does #1-3);

> ➢ Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. (against the District);

> ➢ Negligent/Reckless Conduct (against Gao, Murray, and Alvarado);

> ➢ Spoliation of Evidence (against the District and Alvarado);

3

4910-5785-6141, v. 4

➢ Intentional Infliction of Emotional Distress (against Gao);

➢ Battery (against Gao);

➢ Loss of Consortium (against Alvarado, Gao, Murray, and John Does #1-3); and

➢ A declaratory judgment deeming R.C. § 2315.18(B)(2) unconstitutional.

## PARTIES

5. This Complaint is brought on behalf of C.S., a minor child, though her parent and next friend, Mrs. Stahl.

6. C.S. is a natural person who resided in Tiffin, Ohio at all times relevant herein.

7. Mrs. Stahl is a natural person who resided in Tiffin, Ohio at all times relevant herein, and C.S.'s mother and legal guardian.

8. Mr. Stahl is a natural person who resided in Tiffin, Ohio at all times relevant herein, and C.S.'s father and legal guardian.

9. At all relevant times herein, the Board and/or District was a political subdivision of the State of Ohio, acting under the color of law and charged with the administration of a public school district.

10. The District is a "person" as defined under 42 U.S.C. § 1983.

11. The Board is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations, and procedures in effect for schools within the District, including, but not limited to, Columbian.

4

12. At all times relevant, the Board and District operated education programs or activities, including at Columbian, and was a recipient of federal financial assistance under Title IX, 20 U.S.C. § 1681, et seq.

13. The District is responsible for all facets of school operations and programs, including the staffing, training, and disciplining of its employees.

14. The District is a "person" as defined under 42 U.S.C. § 1983.

15. At all times relevant herein, Gao was a teacher employed by the District, and was acting under the color of law. Gao taught Chinese I, II, and III at Columbian, and was employed by the District from 2010 until April 2025. Upon information and belief, Gao resides in Dublin, Ohio.

16. Gao is a "person" as defined under 42 U.S.C. § 1983 and is sued in his individual capacity.

17. Upon information and belief, Alvarado was a Columbian Principal, employed by the District from July 2023 until August 2024, and was acting under the color of law. Upon information and belief, Alvarado resides in Tiffin, Ohio.

18. Alvarado is a "person" as defined under 42 U.S.C. § 1983 and is sued in his individual capacity

19. Upon information and belief, Murray was a Columbian Assistant Principal or Principal (August 2024 – July 2025) employed by the District, and was acting under the color of law. Upon information and belief, Murray resides in Gibsonburg, Ohio.

5

20. Murray is a "person" as defined under 42 U.S.C. § 1983 and is sued in his individual capacity.

21. Defendants John Does #1–3 are unknown employees of the District, whose identities are currently unknown to Plaintiffs despite reasonable diligence. At all relevant times, John Does 1–3 acted under color of law and participated in, authorized, facilitated, or failed to prevent the unconstitutional and unlawful conduct described herein, including retaliation, confidentiality breaches, and destruction or concealment of evidence. Plaintiffs will amend this Complaint to substitute the true names of John Does 1–3 when their identities are ascertained through discovery.

22. John Does #1-3 are "persons" as defined under 42 U.S.C. § 1983 and is sued in his individual capacity

## JURISDICTION AND VENUE

23. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

24. Claims are asserted under the Fourteenth Amendment to the United States Constitution; 20 U.S.C. § 1681; 42 U.S.C. § 1983; and state law.

25. To the extent declaratory relief is sought, those claims are asserted pursuant to 28 U.S.C. §§ 2201 and 2202.

26. Jurisdiction with respect to state-law claims is invoked pursuant to 28 U.S.C. § 1367, state statutes, and state common law.

4910-5785-6141, v. 4

27.     Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims brought herein commenced and occurred within the jurisdiction of the Northern District of Ohio.

## BACKGROUND

28.     Despite living in Dublin, Ohio, in 2010, Gao applied to the District to lead Columbian's Chinese program, comprised of Mandarin Chinese I, II, and III.

29.     If Columbian students wish to earn an honors diploma, signifying their successful completion of a more challenging curriculum, they are required to complete, among other qualifications, three years of a foreign language. Therefore, completing three years of Mandarin with Gao and receiving satisfactory grades meant that a student was one step closer to receiving an honors diploma.

30.     When C.S. began high school at Columbian in August 2024, she was eager to expand her knowledge and understanding of the Chinese culture and become fluent in the Mandarin language, while working toward her honor's diploma. Because Gao was the only teacher who taught Columbian's Mandarin courses, C.S. was placed in his class. But what C.S. and her parents could not foresee—that the District could—was that the 2024/2025 school year would be full of sexual harassment, innuendos, and inappropriate touching, resulting in C.S. suffering from a debilitating medical condition and great emotional distress.

7

***The District Was Aware Of, And Deliberately Indifferent To, Gao's Propensity To Harass
And Discriminate Against Female Students.***

31.     When C.S. began Mandarin in August 2024, the District was aware that Gao discriminated against female students in the past. Thus, its failure and indifference to rectifying his behavior toward female students resulted in C.S. and many other female students being subjected to Gao's harassment.

32.     Through public records requests, Mr. and Mrs. Stahl have *partially* uncovered the District's knowledge of Gao's propensity and preference to discriminate against female students. While Mr. and Mrs. Stahl uncovered documented incidents of Gao discriminating against female students dating to, at minimum, March 2023, upon information and belief, Gao's discrimination—and the District's knowledge—date even further back.

33.     Upon information and belief, Gao harassed a female employee in or around 2015. Upon further information and belief, the female employee reported it to the District, yet despite requesting a full copy of Gao's disciplinary records, and being advised of a complete response, Mr. and Mrs. Stahl received no documentation or investigatory reports.

34.     Upon information and belief, Defendants John Does #1-3 knew of the harassment, and actively participated in concealing it through acts including, but not limited to, shredding, deleting, or otherwise destroying any and all reports.

***March 2023: A female student reports Gao to the District.***

35.     As discovered through public records requests, in March 2023, the District received a complaint and request from a female student to withdraw from her Mandarin

8

course with Gao because, according to Columbian counselor Kristal Dunlap ("*Dunlap*"), the student was "having some serious issues with the teacher." The issues were serious enough that, although Dunlap typically did not allow students to drop a course after the third quarter, Dunlap turned the issue over to then Principal Alvarado on March 22, 2023, to approve or override the request and "handle any potential staff issue (if applicable)." On March 27, 2023, Dunlap followed up with Alvarado, stating "I know you are crazy busy, but I wanted to circle back with you on this situation. Have you had a chance to talk to [REDACTED] about her reported issues with Dr. Gao?"

36. Upon information and belief, even though Alvarado and the District received a complaint from a student having "serious issues" with Gao, Alvarado and the District did not investigate the reported conduct, nor did they reprimand Gao, place him on leave, or take any administrative measures to address the behavior. Thus, after this incident, Gao remained unchecked and free to continue harassing female students and eventually C.S.

*September 2024: Another female student reports Gao to the District.*

37. In another unchecked incident, one month after C.S. enrolled at Columbian, and in the midst of the harassment she endured in Gao's class, assistant principal, Amy Hineline ("*Hineline*") received an urgent email, from, upon information and belief, a female student, with the titled subject, "I need to speak with You," on September 26, 2024.

38. The email read: "So sorry to bother you with this, but I've been having the same recurring issues with my 4th period teacher Dr. Gao making/saying inappropriate comments and phrases and humiliating students that aren't doing anything wrong."

9

Implying that this is not the first time experiencing Gao's mistreatment, the student continued "[i]t's been extra bad this year and we aren't even a quarter in." The concerned student reiterated the urgent need of the request: "Please get back with me if you can talk sometime today. Again, so sorry to bother you, have a nice day." Approximately an hour after receiving the email, Hineline forwarded it to Murray at 12:07 PM, who followed up with Gao at 5:59 PM, indicating he received a report of "alleged inappropriate comments/language" that was brought to his attention "late" that day by a student. Murray asked to speak with Gao the following day.

39.     Upon information and belief, the District did not conduct a thorough investigation of Gao—who had already been the subject of multiple complaints by females at Columbian—following this complaint, and failed to punish or suspend Gao, showing it tolerated his behavior and would allow it to go unscathed.

40.     Further, despite being advised of a complete response to their request for Gao's disciplinary file, Mr. and Mrs. Stahl received no documents or reports relating to this incident.

41.      Being one month into the 2024/2025 school year, Gao's discriminatory behavior toward C.S. already began, as he would often force her to take photographs with him, placing his arm around her in a manner that allowed him to touch her hips, buttocks, and chest with his hand. Had the District taken action or, at a minimum, lodged disciplinary action, mandated training, or thoroughly investigated the previous complaints against him,

10

Gao's behavior that only grew more severe over time may have been tempered or stopped altogether.

*January 2025: Gao is reported yet again by a female student.*

42. In another documented incident of sex-based discrimination, capitalizing on female stereotypes, a concerned mother emailed Hineline on January 9, 2025: "Hello this is [REDACTED] mom. [REDACTED] informed me yesterday her Chinese teacher (Dr. Gao) called her the fattest kid in the class and said she has no talent. This has upset [REDACTED] very much and I feel something needs to be done about it. I don't feel it is okay for someone in a professional position to act like this. [REDACTED] said she wanted to cry because she felt embarrassed. She doesn't want to be in that class any longer."

43. In less than a year, another student requested to be removed from Gao's class as a result of his abusive and discriminatory behavior.

44. After, Hineline notified then Columbian principal Murray, who simply replied "great."

45. The next day, Murray inquired via email: "Hey Dr. Gao – [REDACTED] came down and told me that you allegedly called her fat in class the other day. Do you recall any interaction with her this week regarding this?"

46. Without further explanation or rationale, Gao simply responded to Murray with "No, I didn't. I didn't call her fat."

11

47.     Without asking any follow-up questions, requesting a statement from Gao, or ordering any further investigation into the incident—in which Gao described a female student as the "fattest" in the class—Murray replied:

| | |
|---|---|
| **From:** | Tim Murray <tim_murray@tiffincityschools.org> |
| **Sent:** | Friday, January 10, 2025 10:07 AM |
| **To:** | Gao, Harry |
| **Subject:** | Re: ▮▮▮▮▮ |

Thank you Big Dawg! Appreciate you getting back so soon! Have a great weekend if I don't see ya.

48.     Gao provided no additional clarification or context, nor did he ask how the complaining student was affected. Instead, Gao, embracing the culture of toxic masculinity the District allowed him to foster, replied:

| | |
|---|---|
| **From:** | Gao, Harry <Harry_Gao@tiffincityschools.org> |
| **Sent:** | Friday, January 10, 2025 10:21 AM |
| **To:** | Tim Murray |
| **Subject:** | Re: ▮▮▮▮▮ |

You as well!, Good Horse!!!

49.     By January 10, 2025, C.S., who had been subjected to Gao's cruel treatment since the beginning of the year, began experiencing the physiological effects of her abuse. In November 2024, C.S. began suffering inexplicable seizures, lasting upward of four to five minutes followed by periods of recovery during which she could barely move. Eventually,

12

the Stahls discovered that C.S. suffered from PNES, a form of seizure that is often induced by stress and seen in women who were the victims of sexual assault.[1]

50. Now, four months into the school year, C.S. was routinely called "hot" and "pretty" by Gao. As before, the frequent photographs Gao made C.S. take with him still allowed him to grope her hips and buttocks rather than placing his arm around her shoulder like with male students.

51. When Gao did not call C.S. "hot," he ridiculed her appearance, telling C.S. she would be prettier if she wore more makeup.

52. Gao also gave C.S. the nickname "dà xiōngbù," which translates to "big boobs" in English.

53. Gao also forced female students, including C.S., to act in skits in which one student would drop a set of books and a female student, facing away from Gao, would be forced to bend down to pick them up as Gao watched from behind.

54. Watching female students from behind as they bend over to pick up books has no legitimate pedagogical purpose whatsoever.

55. Gao's behavior continued until March 2025, when, after numerous reports from female students and nearly two weeks of retaliation—as C.S. and other female students would soon experience—from Gao once reported, he was finally removed from the District's classroom.

---

[1] https://my.clevelandclinic.org/health/diseases/24517-psychogenic-nonepileptic-seizure-pnes

4910-5785-6141, v. 4

*__March 2025: Gao's Discrimination Against Female Students Reaches A Boiling Point.__*

*__March 4, 2025: Gao corners C.S. at his desk and gropes her thigh.__*

56.     C.S. excelled and continues to excel in school. Through middle school, before enrolling at Columbian, C.S. maintained a grade point average near 4.0 and was regularly named to her middle school's honor roll. Fortunately for C.S., her academic success and accomplishments carried into high school, including Gao's Mandarin class despite the obstacles he created for female students and C.S.

57.     On March 4, 2025, when Gao told her that she was struggling with a concept in his class—perplexed—C.S. went to Gao's desk at his command.

58.     Gao asked C.S. to sit down at his desk, which was blockaded by other furniture in the classroom, creating an enclosure.

59.     As C.S. sat at the desk with Gao, he crept close to her, reaching across her body to point at the materials in front of them.

60.     As the two sat there, Gao placed his near hand on the inside of C.S.'s thigh—without invitation, consent, and disregarding that C.S. was fourteen years old and his student at the time. Frozen and defenseless, C.S. sat there as Gao rubbed C.S.'s thigh for approximately thirty seconds.

61.     In March 2025, C.S.'s PNES was at its worst, with her suffering from five to seven seizures per day, many of which would last over two minutes and require from several minutes to a half hour to recover. On any given day, C.S. could spend more than a half hour each day in a temporary paralysis as a result of her PNES.

14

4910-5785-6141, v. 4

*March 5-6: nine female students, including C.S., report Gao.*

62. After dealing with Gao's abuse for most of the 2024/2025 school year, numerous female students reported Gao to the Columbian office and the District.

63. Upon information and belief, during another Mandarin class C.S. was not in, Gao, as had become customary, yelled and degraded a group of female students.

64. Upon information and belief, the female students, whom Gao yelled at, asked to be excused from class to get respite from his treatment. When the female students returned to Gao's classroom, Gao grew even more irate, screaming and berating the students who need a break from his mistreatment.

65. The fed-up students went to the Columbian office, reported Gao, and gave detailed hand-written statements.

66. Jane Doe Student 1 reported that Gao told inappropriate stories, talked down to women and made them feel unworthy, and was not respectable with personal space.

67. Jane Doe Student 2 reported that Gao used inappropriate language toward female students, made comments about girls wearing short skirts, told one girl she should wear makeup more often, and had no awareness of personal space, often getting into students' faces. She also reported that Gao allowed male students to get away with things and would join in with them implying something inappropriate.

68. Jane Doe Student 3 reported that Gao leaned in close to female students' faces when talking, did not discipline male students for inappropriate comments, laughed when

4910-5785-6141, v. 4

inappropriate comments were made about female students, and expressed that, if he were younger there were girls in the school he would be interested in going after.

69.     Jane Doe Student 4 reported that Gao told her she should wear makeup more often because he liked girls who wore makeup. She also discussed Gao's approval of short skirts, sex, and "boobs." She also recounted Gao touching her breast when taking photographs with her.

70.     Jane Doe Student 5 –during two years of classes with Gao—reported that he:

> ➢ Allowed male students to leave class whenever they wanted and allowed them to use their books rather than read and memorize;

> ➢ Allowed the male students in class to comment on girls inappropriately (ex. "Show me your boobs.");

> ➢ Talked about rape and sex in class and did nothing when the male students took the discussion out of hand;

> ➢ Called her out in class for saying that she was not okay with the comments made by male students;

> ➢ Constantly stated students were dumb, stupid, idiots or that they were going nowhere in life;

> ➢ Said he liked girls in short skirts;

> ➢ Became too close for comfort when talking;

> ➢ Commented on the attractiveness of women in music videos and would guess about who they looked like in class;

> ➢ Commented that women in music videos were hot and would guess who they looked like in class;

> ➢ Would single female students out based on how they looked (hair, makeup, clothes, etc.);

16

4910-5785-6141, v. 4

> ➢ Asked one female student if she thought her breasts would grow; and

> ➢ Encouraged and laughed at inappropriate comments and jokes made by male students.

When asked to identify witnesses to Gao's treatment, Jane Doe Student 5 identified C.S. and eight other female students.

71.     Jane Doe Student 6 reported that Gao:

> ➢ Would show a Chinese woman singing and call her hot, and then ask the class who the woman looked like;

> ➢ Taught the class a word that he said looked like "boobs" and that "boobs are beautiful,"

> ➢ Taught the class how to say "have sex with women" and "rape women," which cause the boys to laugh and repeatedly say those phrases;

> ➢ Taught the class that a word meant "to Come" and then said "I come, you come, everybody comes," which caused the male students to laugh;

> ➢ Graded female students harder;

> ➢ Constantly talked about sex;

> ➢ Would call the girls stupid when they made mistakes, but when the boys made mistakes it was okay;

> ➢ Stated that having "big boobs" makes you beautiful;

> ➢ Called a female staff member a "b**ch"; and

> ➢ Failed to intervene when the male students would say inappropriate things and comment on the female students' bodies.

17

Jane Doe Student 6 also detailed being "scared" to report Gao because he "cannot keep a secret."

72.     Upon information and belief, two other female students tried reporting Gao, but were inexplicably denied the opportunity to generate a written statement.

73.     The statements detailed prolonged improper conduct by Gao, including comments regarding appearance; body parts; sexuality; disrespecting and violating the personal space of female students; academic-based disparate treatment; and incendiary comments to rouse male students to join Gao in discriminating C.S. and other female students. The statements vividly describe the hostile learning environment Gao created for C.S. on a daily basis.

74.     As described by Jane Doe Student 6, Gao's hostility toward students— particularly females—caused pause as to whether she would report him. As C.S. and the female complainants would soon discover, Jane Doe Student 6's concern over reporting Gao was validated, as the District would allow him to remain in the classroom with C.S. and other female complainants, and would retaliate against them for reporting his discriminatory behavior.

*March 6, 2025: C.S. reports Gao's discrimination.*

75.     As the Jane Doe Students reported Gao, they advised the District that C.S. also endured the same treatment in the hostile environment Gao created.  However, C.S. was not summoned to the Columbian office until a day later to make a report, despite the serious nature of his conduct. In her report to Columbian and the District, C.S. detailed the following:

18

- ➢ "He talks to us girls about our family and not with any of the boys."

- ➢ "He talks about how we look (hair, makeup, clothes) if he said we look good or cute that day."

- ➢ "He gets mad and treats the girls in the class horribly if we get something wrong."

- ➢ "He calls us girls cute, talks about girls not in the class (like how pretty they are)"

- ➢ "He likes touching our arms, hugging us, and touching our backs."

- ➢ "He gets really mad at us [girls] when the boys are doing the same thing."

- ➢ "He treats the boys like they are the best and the girls get all the backlash if he gets mad."

- ➢ "He makes fun of the girls if they make one mistake and gives all the boys multiple tries."

- ➢ "He talks with us girls about personal stuff like where we live and where we were born and more."

- ➢ "He talks to the boys about how hot and cute students (girls) look."

- ➢ "He has taken tons of pictures with us girls."

- ➢ "He grabs some of our hips when in the photos."

76.     The next day, District Title IX Coordinator, Michelle Tuite ("*Tuite*"), asked C.S. to return to the Columbian office to provide another report of Gao's misconduct. After C.S. completed her report about Gao's behavior, Tuite, and thus the District, sent C.S. back to Gao's class without offering her any supportive measures, including, but not limited to, a no contact order, removing her from Gao's class, or the opportunity to speak with a counselor.

77.     Upon information and belief, the next day, Tuite provided a "Notice of Meeting" to Gao, in which she invited him to attend an investigative interview to discuss the complaints made against him the day before by female students. During this pre-disciplinary

19

meeting, Gao was questioned by District Superintendent Gerald Nadeau ("*Nadeau*") and Assistant Superintendent, who failed to take notes during the meeting, and Tuite.

78.     The following day, Tuite, provided a "Notice of Formal Complaint" to the Stahls, outlining the District's Title IX and Student-Staff policies and procedures for addressing complaints.

79.     The District's policies included the following key mandates:

> ➢  The relationship between staff and students must be one of cooperation, understanding and mutual respect;

> ➢  Staff must provide an atmosphere conducive to learning and to motivate each student to perform at his/her capacity;

> ➢  Partiality and the appearance of impropriety must be avoided by staff toward students;

> ➢  Staff members shall not make derogatory comments to students regarding the school, its staff, and/or other students;

> ➢  Staff members shall not associate with students at any time in any situation or activity which could be considered sexually suggestive;

> ➢  Staff members shall not use insults or sarcasm against students as a method of forcing compliance with requirements or expectations;

> ➢  Staff members shall not disclose information concerning a student, other than directory information, to any person not authorized to receive such information, including, but not limited to, information concerning assessments, ability scores, grades, behavior, mental or physical health, and/or family background.

(**Exhibit 1**, JM, GBH at 1-2). A true and accurate copy of JM, GBH is attached to this Complaint.

80.     Expanding on conduct that amounts to "sexual harassment," the District's "Nondiscrimination on the Basis of Sex/Sexual Harassment" form lists: unwanted sexual advances; grooming; repeated sexual jokes; flirtation; verbal abuse of a sexual nature; graphic

20

verbal commentary relating to an individual's body; any unwanted physical contact; sexually suggestive or obscene comments or gestures; and displays in the workplace of sexually suggestive or obscene objects or pictures. (**Exhibit 2**, ACA/ACAA at 2 ). A true and accurate copy of ACA/ACAA is attached to this Complaint. The District also notes that whether an act/comment constitutes sexual harassment-type conduct is often dependent on the individual recipient. (*Id.*).

81.     The District's policies also emphasize its confidentiality mandate, stating: "Sexual harassment matters, including the identity of both the reporting party and the responding party, are kept confidential to the extent possible, consistent with the Board's legal obligation to investigate." Although the discipline may be imposed against the responding party upon a finding of guilt., the District prohibits retaliation for an individual's participation in, and/or initiation of a sex discrimination/sexual harassment complaint investigation. (*Id.* at 3).

82.     Further, according to the District's Title IX grievance procedures, Tuite was required to:

> ➢ Promptly communicate with reporting party in order to obtain a clear understanding of that party's statement of the alleged facts. The statement is put in writing by the Title IX Coordinator and signed by the reporting party, where possible, as a testament to the statement's accuracy.

> ➢ Communicate with the responding party in order to obtain his response to the complaint. The response is put in writing by the Title IX Coordinator and signed by the responding party, where possible, as a testament to the statement's accuracy.

21

> ➢ Communicate with the parties and witnesses (if any) as necessary to gather all of the relevant facts. The dates of any meetings and the facts gathered are all put in writing. The investigation is prompt and equitable, and allows both parties an equal opportunity to present witnesses and other evidence.

> ➢ Prepare a written report summarizing: the evidence gathered during the investigation and whether the allegations were substantiated; whether any Board policies or student or employee codes of conduct were violated; any recommendations for corrective action. The investigation report indicates if any measures must be instituted to protect the reporting party. Such measures may include, but are not limited to, extending any interim measures during the investigation. The report also informs the reporting party of available support services, which at a minimum includes offering school counseling services if the reporting party is a student.

(*Id.* at 2). Once an investigation is complete, the parties are to be provided with a written notice of the outcome of the complaint. (*Id*. at 3). Deviating far from its mandates, the District never provided the Stahls with a statement from Gao, nor did it provide a written determination from its *investigation* into his misconduct.

83.     Despite the nature of the conduct Gao perpetuated against C.S. and his female students, the District failed to take or offer C.S. interim measures, allowing Gao to remain teaching while the District's investigation took place, with C.S. in his class.

*March 7, 2025: Gao retaliates against the female students who reported him.*

84.     The next day, as C.S. entered Gao's class, she discovered a petition with signatures from male students, stating "free Dr. Gao." Gao eventually placed the petition in the front of the class, proclaiming "how good" the male students were and that they must "take a stand" to ensure Gao remained in school.

22

4910-5785-6141, v. 4

85.     Gao also told the male students in C.S.'s class that they must find the female students, including C.S., who reported him, and "touch" them in the way they accused him of doing. Gao also demanded the male students make the lives of the females who reported him a "living hell."

86.     Shortly into Gao's class, Hineline entered the classroom. Distraught, C.S. left the room so she could speak with Hineline about Gao's harassment. C.S. was taken to a neighboring office where she, Murray, and Hineline could hear Gao yelling at her classmates about being reported for his discriminatory behavior, placing the District on notice of his intent to retaliate.

87.     While C.S., Hineline, and Murray spoke, Gao entered the office they were in, upset, asking why C.S. left the classroom. Having discovered that Gao was rallying the male student body in his defense, Hineline told Gao to stop immediately. That said, upon information and belief, Murray—whom Gao called "good horse"—took no further action against Gao—whom Murray called "big dawg" in the midst of Gao calling a female student the "fattest" in class. Had Murray investigated and disciplined Gao then, C.S.'s harassment could have stopped in September 2024, soon after it began. But Murray failed to act then. If Murray disciplined Gao on the day C.S. told him Gao was recruiting male students in his support, then Murray could have prevented the torment C.S. experienced over the next few days, ultimately leading to a significant medical emergency for C.S.

23

88. In another class later that day, C.S. witnessed two male students mocking those who reported Gao, one touching and rubbing the other's arm, in the presence of a Columbian substitute teacher.

89. At the end of the day, C.S. and her friends, who also reported Gao, again discussed the similarities in the way Gao treated them. Ultimately, C.S. and her friends went to the Columbian office, again, to make yet another report to the District. Here, a crying C.S. pleaded with the District that she did not want to be touched anymore.

90. C.S. also spoke with Columbian resource officer, Doug Skornika ("*Officer Skornika*"). C.S. described Gao's longstanding pattern of touching and rubbing her back and arms without consent, making her uncomfortable. Officer Skornika responded by merely blaming it on Gao's "culture," stating Gao was this way since Gao started at Columbian.

91. C.S. suffered six seizures on this day.

*March 10, 2025: Gao asks C.S. personal questions to discover where she lives.*

92. Despite being notified of Gao's discriminatory behavior and hearing him yell at C.S.'s class, C.S. and other female students were irresponsibly again placed by the District in Gao's class three days later.

93. Gao's behavior became even more concerning on this day. Causing C.S.—who now suffered between six and seven seizures per day—even more emotional distress, Gao asked her personal questions that included: (1) where her house was; (2) where her bedroom was; (3) what the house looked like; and (4) if her bedroom had windows. Gao threatened

24

C.S. with finding the information on the school's system if she did not tell him, which ultimately, she felt compelled to do.

### *March 11, 2025: The District reaffirms Gao's presence at Columbian despite his known history of discriminating against female students.*

94. On March 11, 2025—only six days after C.S. and other students submitted their initial reports—the District issued an "Allegations and Corrective Action Summary" to Gao. In it, the District acknowledged it was notified of allegations involving intrusion of personal space, sexist comments, inappropriate physical contact, gender-based discrimination, and other unprofessional conduct. Yet, the District's proposed corrective action merely suggested that Gao "act and speak in a positive and professional manner."

95. The District noted Gao's history of treating students the way his female students complained of on March 5, 2025:

> Additionally, it's important to note that this most recent incident is the third incident brought to the high school's administration since the Spring of 2024. The previous two incidents were addressed by the high school principal at that time and were similar in nature.

(**Exhibit 3**, Allegations and Corrective Action Summary for Dr. Gao). A true and accurate copy of the Allegations and Corrective Action Summary for Dr. Gao is attached to this Complaint.

96. Although Mr. and Mrs. Stahl made a formal request for all disciplinary records pertaining to Gao from his first date of employment until the time he was placed on leave, the District, informing them all responsive records were provided, did not produce records indicating disciplinary actions or formal investigations into the accusations. Furthermore,

25

when Mrs. Stahl inquired in March 2025 as to whether investigative documents existed about Gao, she was informed by Hineline that previous principal, Alvarado, told her that he shredded the documents, despite them detailing a pattern of discriminatory behavior and harassment toward female students.

97. The fact Alvarado shredded the investigatory documents pertaining to Gao is of extraordinary significance, because, upon information and belief, after Mr. and Mrs. Stahl discussed with past Columbian students familiar with Gao, he had a longstanding pattern of discriminating against female students, dating back to when he first began teaching at Columbian. Upon further information and belief, a female Columbian employee reported Gao in or around 2015 regarding his harassment of her. However, Gao was not investigated, disciplined, or trained by the District following this report, showing him that harassment will be tolerated.

98. Upon information and belief, John Does #1-3 were aware of Gao's severe, pervasive, and offensive treatment of female students, including C.S., and actively participated in the inadequate investigation and disciplinary process of Gao, allowing him to remain in the classroom despite being reported by nine students in March 2025.

*March 14-17, 2025: The District confirms an inadequate investigation.*

99. On March 14, 2025, Mr. Stahl emailed Tuite, requesting an update regarding her Title IX investigation into Gao's sex-based discrimination. Tuite called Mr. Stahl the next day and informed him that C.S. was considered a witness rather than a complainant despite

26

the fact that C.S. submitted a written report detailing sex-based discrimination on March 6, 2025.

100. On March 17, 2025, in a meeting with Mr. and Mrs. Stahl, Tuite confirmed that she provided handwritten copies of the reports generated by C.S. and the other female students to Gao. According to Tuite, providing the reports was justified because she redacted the students' names—ignoring the substantial likelihood that Gao could decipher which students the handwriting belonged to. As Mr. and Mrs. Stahl discussed the District's Title IX missteps thus far, Tuite deflected blame to the District and Murray for a lackluster investigation and the fact Gao remained on campus.

101. The District's failure to follow its Title IX procedures kept Gao in the classroom for thirteen days following C.S. and other female students reporting his mistreatment—that the District knew Gao had a propensity for—allowing him to retaliate against those who reported him.

102. After the District received handwritten reports from C.S. and other female students describing Gao's misconduct, he administered a written quiz in C.S.'s class, which was unusual for the course. The quizzes were not returned to students, and, upon information and belief, were used to compare handwriting to determine the identities of students who reported Gao. Following this process, the names of certain reporting students were disclosed publicly by Gao.

103. After some students were identified, Gao made statements to other students that encouraged conduct toward the reporting students that mirrored the allegations raised

4910-5785-6141, v. 4

against him. As a result, certain male students engaged in conduct directed at the female students who had reported the misconduct. Rather than receiving protection after coming forward, C.S. and other students experienced retaliatory harassment from male students or the threat of the same, which occurred as a result of Gao's continued presence and influence within the school environment.

104.    During this period, some male students verbally threatened the female students and pursued them, including C.S., through school hallways while chanting slogans in support of Gao. Other students organized a petition advocating that Dr. Gao face no disciplinary action and be permitted to remain in the classroom, asserting that he was being treated unfairly. Despite these developments, the District took limited disciplinary action in response to the conduct of the students involved. The District also allowed Dr. Gao to remain in a position of authority during this time.

105.    In addition, as of March 17, 2025, the "free Gao" sign that Murray was previously notified of remained, as Gao continued to rally male students in his defense, as Murray failed to follow up on the information he was provided ten days before.

106.    The District's response—or lack thereof—including its failure to promptly remove Gao from authority or to adequately address the ongoing harassment, had a significant impact on C.S. and the other affected students. Rather than providing support and ensuring a safe educational environment while an investigation was conducted, the District's inaction permitted conditions causing C.S. to experience emotional distress.

4910-5785-6141, v. 4

107. The District allowed Gao to remain in the classroom with C.S. despite knowing that: (1) Gao had a history of abusing and discriminating against female students before C.S. enrolled at Columbian; (2) the District had previously covered up Gao's prior abuse; and (3) the District failed to conduct a Title IX investigation or offer interim, supportive measures to C.S. During the days C.S. was forced to attend Gao's class after reporting him to no avail, she suffered between five and seven seizures per day.

108. The severity and frequency of the seizures became too overwhelming to address and manage while at school. Thus, to preserve her health and physical safety, C.S.'s physicians ordered that she complete the school year from home on March 18, 2025, following an overnight stay in the hospital between March 13-14, 2025.

### *The Toll On C.S.'s Emotional And Physical Health*

109. C.S.'s freshman year at Columbian was now cut short due to the tremendous stress Gao's treatment placed on her. In addition to the emotional distress he caused her in and out of the classroom, now, Gao's behavior exacerbated it by taking her time away from friends, her time with the school's track team, and the remainder of her first year of high school.

110. Gao's treatment—enabled by the District's willful disregard—has had a profound impact on Mr. and Mrs. Stahl. Witnessing their daughter, C.S., lose all control of her body as she seizes induced fear, helplessness, and a significant emotional toll.

111. Following her experience with Gao, catalyzed by District's mishandling of an employee with an established history of discriminating against female students, then

29

mishandling another opportunity to address Gao's behavior once C.S. and eight other female students reported him, C.S. has required ongoing counseling.

112. Upon her intake, C.S. reported experiencing suicidal thoughts in the month before beginning counseling.

113. C.S. also reported feeling depressed, anxious, and withdrawn from her family at home, placing an undue strain on C.S.'s relationship with her parents, Mr. and Mrs. Stahl. Many nights, rather than spend time with her family like she would before enduring Gao's torment, C.S. preferred to be away from her parents—alone—taking away from the precious time Mr. and Mrs. Stahl have with their daughter.

## COUNT ONE
## 42 U.S.C. § 1983
## VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – SUBSTANTIVE DUE PROCESS
### (C.S. against Gao)

114. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

115. Gao is a "person" within the meaning of 42 U.S.C. § 1983.

116. At all relevant times herein, Gao acted under the color of law and was responsible for the formulation and/or implementation of all official governmental laws, policies, regulations, and procedures in effect for schools within the District, including, but not limited to, Columbian.

117. C.S. has a constitutional right to personal security, bodily integrity, and due process, all of which are protected by the Due Process Clause of the Fourteenth Amendment

30

to the United States Constitution. Gao violated C.S.'s fundamental rights through his actions that included, but were not limited to:

> ➢ Calling C.S. a Mandarin term that meant "big boobs" in English;
>
> ➢ Using unconsented photographs to grope C.S.'s hips, buttocks, and breast;
>
> ➢ Calling C.S. "hot;"
>
> ➢ Telling C.S. to wear more makeup;
>
> ➢ Groping C.S.'s thigh under the guise of her "struggling" with a class concept;
>
> ➢ Comparing C.S. to Chinese singers while simultaneously calling both hot;
>
> ➢ Making faces while looking at C.S.'s buttocks or chest;
>
> ➢ Hugging C.S. without consent;
>
> ➢ Telling other students, which C.S. became aware of, that they would get C.S.'s "disease" if they sat in her chair in class; and
>
> ➢ Recruiting male students to join his discrimination and harassment once more female students, including C.S., reported him.

118. Gao's severe, pervasive, and objectively offensive conduct was performed with a reckless disregard for C.S.'s physical and emotional health, constituting egregious and outrageous behavior.

119. Gao's conduct caused C.S. to suffer damages in an amount to be proven at trial.

## COUNT TWO
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – SUBSTANTIVE DUE PROCESS
### (C.S. against Alvarado, Murray, and John Does #1-3 – Supervisory Liability)

120. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

31

121.    Alvarado, Murray, and John Does #1-3 are "persons" within the meaning of 42 U.S.C. § 1983.

122.    At all relevant times herein, Murray, Alvarado, and John Does #1-3 were acting under the color of law and were responsible for the formulation and/or implementation of all official governmental laws, policies, regulations, and procedures in effect for schools within the District, including, but not limited to, Columbian. These individuals acted in their official capacities and on behalf of the District, demonstrating a widespread tolerance to Gao's behavior and discrimination against females.

123.    Murray, Alvarado, and John Does #1-3 had actual knowledge of the harassment and abuse committed by Gao, yet disregarded the known or obvious consequences of their actions, in that Gao, a subordinate, would continue to discriminate and retaliate against C.S. and other female students.

124.    Murray, Alvarado, and John Does #1-3 violated C.S.'s rights by remaining indifferent to previous reports of Gao's discriminatory behavior that was severe, pervasive, and objectively offensive.

125.    Alvarado went as far as to shred investigatory documents detailing Gao's discriminatory behavior, despite the frequency in which discrimination against students, particularly on the basis of sex, leads to litigation.

126.    After conducting a swift investigation into Gao's severe, pervasive, and objectively offensive treatment and retaliation, Murray placed Gao back in the classroom with C.S.

4910-5785-6141, v. 4

127.     Murray, Alvarado, and John Does #1-3, in their supervisory capacities, enabled and resulted in the deprivation of C.S.'s rights to due process.

128.     Thus, C.S. is entitled to damages in an amount to be proven at trial.

## COUNT THREE
## 42 U.S.C. § 1983
## VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – SUBSTANTIVE DUE PROCESS
### (C.S. against the District under *Monell*)

129.     Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

130.     The District is a "person" within the meaning of 42 U.S.C. § 1983.

131.     At all relevant times herein, Murray, Tuite, Hineline, Alvarado, and John Does #1-3 and thus the District, were acting under the color of law and were responsible for the formulation and/or implementation of all official governmental laws, policies, regulations, and procedures in effect for schools within the District, including, but not limited to Columbian. These individuals acted in their official capacities and on behalf of the District, demonstrating a widespread tolerance to Gao's behavior and discrimination against females.

132.     In response to public records requests, the District provided documentation demonstrating it was aware of Gao's sex-based discrimination in March 2023, September 2024, and January 2025. Then, in March 2025, the District was alerted by nine female students, two who were, upon information and belief, denied the opportunity to generate a written report,  of the following severe, pervasive and offensive conduct from Gao:

> ➢ Commenting about girls' bodies, including breasts, makeup, short skirts, and physical appearance, and has asked inappropriate

33

questions (e.g., about breast development), causing students to feel violated and uncomfortable;

➢ Invading personal space by leaning in very close, getting in students' faces, putting his arm around students, and, in some instances, touching students' bodies inappropriately while taking photos;

➢ Inciting male students to frequently make sexually explicit and harassing comments toward female students. Dr. Gao allegedly laughs, ignores the behavior, or implicitly encourages it rather than intervening, which students describe as creating a hostile environment;

➢ Discussing sex, rape, and sexual topics in class, plays music videos while commenting on the attractiveness of women, and compares them to students, contributing to discomfort and distress;

➢ Favoring male students, including relaxed rules, academic accommodations, and tolerance of disruptive behavior, while female students are disciplined more harshly for similar or lesser conduct;

➢ Calling female "stupid," "idiots," "worthless," and told they will "go nowhere in life," with female students describing a disproportionate and repeated pattern of verbal humiliation;

➢ At least one student reports being singled out and publicly identified to the class after expressing discomfort with inappropriate comments, discouraging future reporting and contributing to fear of retaliation; and

➢ Students describe feeling unsafe, violated, and emotionally distressed, with some reporting noticeable impacts on mental health and academic confidence, observed by parents and peers.

The District responded by noting this was the third such incident reported to school administration since spring 2024, and that previous incidents were "similar in nature," indicating the District was aware Gao treated female students this way since before C.S. enrolled at Columbian but allowed him to remain employed.

34

4910-5785-6141, v. 4

133.    The District was aware that Gao discriminated against female students because of their sex, yet promulgated—through its deliberate indifference—policies, customs, or actions by District decision-makers that kept him in the classroom, failing to discipline him, making it likely that he would continue to discriminate. This substantial likelihood led to Gao's discrimination of C.S. and torment as Gao, himself and through the male students he recruited, retaliated against her and other females at Columbian.

134.    When the District was again confronted with complaints from female students in March 2025, the District failed to follow its Title IX policies, including confidentiality mandates by enabling Gao to review the handwriting of those who reported him. The District also failed to classify C.S. as a Title IX complainant, conduct an investigation, and generate a report as to the findings specific to her.

135.    C.S. was treated differently than similarly situated District Students because the District failed to promptly and effectively address and remedy instances of sexual harassment and sex-based discrimination by Gao, and therefore tolerated such harassment and enabled Gao to engage in continued sexual harassment and discrimination.

136.    The District's policies and procedures perpetuated disparate treatment of C.S. and other female students.

137.    The District had knowledge (actual or constructive) that the sexual harassment/abuse policies, practices, and/or customs in place at Columbian posed substantial risks to the health and safety of female students including C.S.

35

138. The District's failures to adequately train, supervise, and/or discipline resulted in an obvious and highly predictable consequences of (1) Gao harassing C.S. and other female students during the 2024/2025 school year and (2) retaliating against C.S. and those who reported him in March 2025, as predicted by Jane Doe Student 6.

139. Further, the District developed, ratified, and enforced a policy that was widespread and established a custom that protected Gao despite being made aware of serious allegations on multiple occasions before he harassed C.S., and yet again before he retaliated against her by recruiting Columbian male students.

140. The District's actions, or lack thereof, were the proximate cause of C.S.'s abuse at Gao's hands, fostering a deliberate indifference to C.S.'s constitutional rights to substantive due process under the Fourteenth Amendment.

141. Therefore, C.S. is entitled to damages in an amount to be proven at trial.

## COUNT FOUR
### 42 U.S.C. § 1983
## VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – DENIAL OF EQUAL PROTECTION
### (C.S. against the District under *Monell*)

142. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

143. The District was aware that Gao discriminated against female students because of their sex, yet promulgated—through its deliberate indifference—policies, customs, or actions by District decision-makers that kept him in the classroom, failing to discipline him, making it likely that he would continue to discriminate. This substantial likelihood led to

36

Gao's discrimination of C.S. and torment as Gao, himself and through the male students he recruited, retaliated against her and other females at Columbian.

144.     The District was aware that Gao discriminated against female students because of their sex, yet promulgated—through its deliberate indifference—policies, customs, or actions by District decision-makers that kept him in the classroom, failing to discipline him, making it likely that he would continue to discriminate. This substantial likelihood led to Gao's discrimination of C.S. and torment as Gao, himself and through the male students he recruited, retaliated against her and other females at Columbian.

145.     When the District was again confronted with complaints from female students in March 2025, the District failed to follow its Title IX policies, including confidentiality mandates by enabling Gao to review the handwriting of those who reported him. The District also failed to classify C.S. as a Title IX complainant, conduct an investigation, and generate a report as to the findings specific to her.

146.     C.S. was treated differently than similarly situated District Students because the District failed to promptly and effectively address and remedy instances of sexual harassment and sex-based discrimination by Gao, and therefore tolerated such harassment and enabled Gao to engage in continued sexual harassment and discrimination.

147.     The District's policies and procedures perpetuated disparate treatment of C.S. and other female students.

4910-5785-6141, v. 4

148. The District had knowledge (actual or constructive) that the sexual harassment/abuse policies, practices, and/or customs in place at Columbian posed substantial risks to the health and safety of female students including C.S.

149. The District's failures to adequately train, supervise, and/or discipline resulted in an obvious and highly predictable consequences of (1) Gao harassing C.S. and other female students during the 2024/2025 school year and (2) retaliating against C.S. and those who reported him in March 2025, as predicted by Jane Doe Student 6.

150. Further, the District developed, ratified, and enforced a policy that was widespread and established a custom that protected Gao despite being made aware of serious allegations on multiple occasions before he harassed C.S., and yet again before he retaliated against her by recruiting Columbian male students.

151. The District's actions, or lack thereof, were the proximate cause of C.S.'s abuse at Gao's hands, fostering a deliberate indifference to C.S.'s constitutional rights to substantive due process under the Fourteenth Amendment.

152. Upon information and belief, Defendants treated complaints of Gao's harassment differently than other complaints.

153. The District knew or should have known that females, like C.S., are more likely to suffer harassment based on sex.

154. The District's disparate treatment of these complaints impacts C.S.'s right to equal protection under the law.

38

4910-5785-6141, v. 4

155. The District's conduct deprived C.S. of educational opportunities and caused her severe emotional distress, in contrast to similarly situated male students.

156. Therefore, C.S. is entitled to damages in an amount proven at trial.

## COUNT FIVE
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – DENIAL OF EQUAL PROTECTION
### (C.S. against Gao)

157. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

158. C.S. and other female students were intentionally treated differently by Gao than similarly situated students.

159. Through the 2024/2025 school year, C.S., like other female students, was subjected to heightened scrutiny and academic disadvantages in comparison her male counterparts.

160. C.S. was reprimanded, touched, ridiculed, yelled at, and groped because she was a female. Male students were not subjected to such cruel treatment; rather, male students were invited and encouraged to partake in the same discriminatory behavior.

161. Gao's conduct was performed with a reckless disregard for C.S.'s physical and emotional health, constituting egregious and outrageous behavior.

162. Gao's conduct caused C.S. to suffer damages in an amount to be proven at trial.

## COUNT SIX
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – SUBSTANTIVE DUE PROCESS
### (C.S. against Alvarado, Murray, and John Does #1-3 – Supervisory Liability)

4910-5785-6141, v. 4

163.    Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

164.    Alvarado, Murray, and John Does #1-3 are "persons" within the meaning of 42 U.S.C. § 1983.

165.    At all relevant times herein, Murray and Alvarado were acting under the color of law and were responsible for the formulation and/or implementation of all official governmental laws, policies, regulations, and procedures in effect for schools within the District, including, but not limited to Columbian. These individuals acted in their official capacities and on behalf of the District, demonstrating a widespread tolerance to Gao's behavior and discrimination against females.

166.    Alvarado, Murray, and John Does #1-3 had actual knowledge of the harassment and abuse committed by Gao, yet disregarded the known or obvious consequences of their actions, in that Gao, a subordinate, would continue to discriminate and retaliate against C.S. and other female students.

167.    Alvarado, Murray, and John Does #1-3 violated C.S.'s rights by remaining indifferent to previous reports of Gao's discriminatory behavior and shredding investigative documents detailing it.

168.    Alvarado went as far as to shred investigatory documents detailing Gao's discriminatory behavior, despite the frequency in which discrimination against students, particularly on the basis of sex, leads to litigation.

40

169.    Alvarado, Murray, and John Does #1-3, in their supervisory capacities, enabled and resulted in the deprivation of C.S.'s rights to equal protection.

170.    Thus, C.S. is entitled to damages in an amount to be proven at trial

## COUNT SEVEN
### 20 U.S.C. § 1681, et seq.
### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### HOSTILE ENVIRONMENT/TITLE IX VIOLATION
### (C.S. against the District)

171.    Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein,

172.    This Count arises from the District's deliberate indifference to Gao's continued, acknowledged, and documented discrimination based on sex.

173.    Sexual abuse and/or harassment is included within the meaning of "discrimination" under Title IX.

174.    Sexual abuse and/or harassment of a student and/or participant creates a hostile environment if the conduct is sufficiently severe that it denies or limits a student's and/or participants ability to participate in or benefit from education programs. Gao's severe, pervasive, and objectively offensive discriminatory conduct included, but was not limited to:

➢ Commenting about girls' bodies, including breasts, makeup, short skirts, and physical appearance, and has asked inappropriate questions (e.g., about breast development), causing students to feel violated and uncomfortable;

➢ Invading personal space by leaning in very close, getting in students' faces, putting his arm around students, and, in some instances, touching students' bodies inappropriately while taking photos;

➢ Inciting male students frequently make sexually explicit and harassing comments toward female students. Dr. Gao allegedly

41

4910-5785-6141, v. 4

laughs, ignores the behavior, or implicitly encourages it rather than intervening, which students describe as creating a hostile environment;

➢ Discussing sex, rape, and sexual topics in class, plays music videos while commenting on the attractiveness of women, and compares them to students, contributing to discomfort and distress;

➢ Favoring male students, including relaxed rules, academic accommodations, and tolerance of disruptive behavior, while female students are disciplined more harshly for similar or lesser conduct;

➢ Calling female "stupid," "idiots," "worthless," and told they will "go nowhere in life," with female students describing a disproportionate and repeated pattern of verbal humiliation; and

➢ At least one student reports being singled out and publicly identified to the class after expressing discomfort with inappropriate comments, discouraging future reporting and contributing to fear of retaliation.

175. Title IX requires schools to promptly investigate student complaints of sexual harassment, and to take interim measures to ensure that its students are not subjected to a hostile education environment. The failure to do so amounts to "deliberate indifference" for which Defendants may be held liable under Title IX.

176. The District failed to take corrective measures or investigate Gao in response to reports or claims of discrimination based on sex. Instead, when faced with "similar" complaints like the ones made by C.S. and eight other female students between March 5-6, 2025.

177. Despite the knowledge of ongoing discrimination based on sex, the District failed to take any remedial actions to protect students such as C.S. and prevent occurrences of sex-based discrimination against C.S., including:

42

4910-5785-6141, v. 4

- ➢ Failing to thoroughly investigate discriminating and inappropriate behavior toward other female students in, at minimum, March 2023, September 2024, and January 2025;

- ➢ Failing to take administrative action with respect to two prior incidents that were "similar" to C.S. and eight other students reporting Gao's discrimination, inappropriate touching, disparate treatment with respect to the educational opportunities of females;

- ➢ Failing to offer C.S. interim measures, thereby placing her in the classroom with Gao, who retaliated against those who reported him, including C.S.

178.     Gao's conduct and the District's actions, inactions, and overall deliberate indifference to Gao's conduct created and fostered a hostile environment for C.S. and other female students. This caused C.S. to suffer damages in an amount to be proven at trial.

179.     Thus, C.S. is entitled to damages in an amount to be proven at trial.

## COUNT EIGHT
### 20 U.S.C. § 1681, et seq.
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### DELIBERATE INDIFFERENCE
### (C.S. against the District)

180.     Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

181.     Title IX and its implementing regulations prohibit retaliation against any person who complains about what he/she reasonably believes to be a Title IX violation, who advocates on behalf of Title IX rights and enforcement, and any person who cooperates in any investigation of a Title IX violation.

182.     C.S. engaged in a Title IX protected activity by reporting a violation of Title IX.

183.     C.S.'s actions were protected by the anti-retaliation provision of Title IX.

43

184.    After the District failed to conduct an adequate investigation, C.S. was placed back in Gao's class and he remained at Columbian for nearly an additional two weeks.

185.    Gao used these two weeks to rally portions of the male student body to fight an "injustice" that Gao faced.

186.    Portions of the male student body signed a long partition that asked to "free Dr. Gao" that he placed in the front of C.S.'s class, undermining the courage she demonstrated in reporting him.

187.    Gao demanded that male students find and touch the female students who reported him the same way the told the District Gao touched them. In addition, Gao instructed male students to make the lives of the reporting students a "living hell."

188.    Gao's adverse actions made C.S. attend school in fear, all while suffering from frequent seizures induced by the stress Gao caused her. Daily, she feared being touched by male students and having her life made into a "living hell."

189.    Thus, C.S. is entitled to be damaged in an amount to be proven at trial.

## COUNT NINE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (C.S. against Gao)

190.    Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

191.    Gao's actions, including, but not limited to,

192.    Gao knew or should have known that his actions would—and did—cause C.S. severe emotional distress.

44

4910-5785-6141, v. 4

193. Gao's conduct was extreme, outrageous, beyond the bounds of decency, intolerable in a civilized society, and taken with a deliberate indifference toward C.S.'s rights and physical and mental well-being.

194. C.S. has sustained significant damages, including, but not limited to, severe emotional distress, PNES, nightmares, PTSD, damages to physical well-being, emotional and psychological damages, as well as other direct consequential damages.

195. As a result, C.S. is entitled to recover damages in an amount to be proven at trial.

## COUNT TEN
### BATTERY
### (C.S. against Gao)

196. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

197. As he tormented her through her first year of high school, Gao used frequent photographs to grope C.S.'s hips, buttocks, and chest. On March 4, 2025, Gao also groped C.S.'s thigh as she sat at his desk, exerting his power over a defenseless C.S.

198. As a result of Gao's intentional and offensive conduct described herein, C.S. is entitled to damages in an amount to be proven at trial.

199. Gao's conduct caused C.S. to suffer damages in an amount to be proven at trial.

## COUNT ELEVEN
### NEGLIGENCE - RECKLESS AND WANTON MISCONDUCT, TRAINING, SUPERVISION, RETENTION, AND DISCIPLINE
### (C.S. against Alvarado, Murray, Gao, and John Does #1-3)

200. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

45

201. Gao owed a duty of care to C.S. to act reasonable under the circumstances based on his experience and training as a teacher.

202. Gao acted with a conscious disregard to the duty of care owed to C.S. by: (1) attempting to sexually groom C.S.; (2) groping C.S. as he forced her to take photographs with him; (3) referring to her as "big breasts" in Mandarin; (4) telling her how "hot" she is; (5) yelling at her when she would make a mistake in class; (6) making C.S. take a written quiz in an attempt to identify her as one of his complainants; (7) enlisting male students to make the lives of those who reported him a "living hell" as C.S. sat in front of him in class; and (8) groping C.S.'s thigh while explaining a class concept she "struggled" with.

203. At all times relevant to this Complaint, Gao, Murray, and Alvarado were employees of the District, which is a political subdivision. Even so, they are not entitled to immunity because their actions were wanton, reckless, or intentional. *See* R.C. § 2744.02(A)(6)(b).

204. Alvarado, Murray, and John Does #1-3 were notified of Gao's propensity to discriminate against female students on many occasions. In fact, when the District issued its Corrective Action Summary to Gao, it reminded him of "similar" incidents—a concerning revelation considering the volume of complaints and severity of Gao's conduct detailed in them.

205. Upon information and belief, Alvarado shredded investigatory documents detailing complaints about Gao, despite his obligation to preserve documents that detailed

4910-5785-6141, v. 4

discrimination on the basis of sex, and would be the basis for an investigation and potential litigation.

206.    Thus, C.S. is entitled to damages in an amount to be proven at trial.

## COUNT TWELVE
### LOSS OF CONSORTIUM
### (Mr. & Mrs. Stahl against Alvarado, Gao, Murray, and John Does #1-3)

207.    Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

208.    As a result of the actions of Alvarado, Gao, Murray, and John Does #1-3, C.S.'s emotional well-being has dramatically suffered, and she has required ongoing therapy since April 2025.

209.    As a result of the actions of Alvarado, Gao, Murray, and John Does #1-3, Mr. and Mrs. Stahl have been deprived of filial companionship, affection, and love from C.S.

210.    As a result of the conduct described herein, Mr. and Mrs. Stahl are entitled to damages in an amount to be proven at trial.

## COUNT THIRTEEN
### SPOLIATION
### (Plaintiffs against Alvarado)

211.    Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

212.    Upon information and belief, Alvarado intentionally and willfully shredded investigatory documents relating to Gao.

213.    Given the severity of previous allegations against Gao, at the time of destruction, Alvarado had knowledge and was fully aware that litigation relating to Gao's behavior was probable.

47

4910-5785-6141, v. 4

214. Alvarado's destruction of these documents has and will disrupt C.S.'s case.

215. As a result of the conduct, Plaintiffs are entitled to damages in an amount to be proven at trial.

## COUNT FOURTEEN
## UNCONSTITUTIONALITY OF R.C. § 2315.18(B)(2) AS APPLIED

216. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

217. Ohio Revised Code Section 2315.18(B)(2) purports to limit the amount recoverable for noneconomic loss in tort actions.

218. Specifically, the statute purports to limit the amount of noneconomic loss a plaintiff may recover to $250,000 or an amount that is equal to three times the plaintiff's economic loss, whichever is greater, up to a maximum of $300,000. If the plaintiff suffered catastrophic injury (as defined in the statute), then there is no limit to the amount of recoverable noneconomic damages.

219. As a result of Defendants' wrongdoing, C.S. suffered severe psychological injuries and non-economic damages.

220. Further, Mr. and Mrs. Stahl suffered the loss of filial consortium as a result of Defendants' wrongdoing.

221. Under the statute, Plaintiffs' recoverable noneconomic losses are limited to $250,000 to $350,000 for each episode of abuse.

222. Ohio Revised Code Section 2315.18(B)(2), as far as it limits the amount Plaintiffs may recover for noneconomic losses for permanent and severe psychological

48

injuries and loss of consortium, is unconstitutional under the state of Ohio Constitution and

U.S. Constitution. *See Brandt v. Pompa*, 171 Ohio St.3d 693, 2022-Ohio-4525.

223.    Ohio Revised Code Section 2315.18(B)(2), as applied, violates Plaintiffs' rights

protected by the Ohio Constitution and U.C. Constitution, including:

➢ The right to a trial by jury under Section 5, Article I of the Ohio Constitution;

➢ The right to "open courts" and "right to a remedy" under Section 16, Article I of the Ohio Constitution;

➢ The separation of powers, under Section 32 Article II of the Ohio Constitution;

➢ The right to due process of law under Section 16, Article I of the Ohio Constitution; and Amendment XIV, Section 1 of the U.S. Constitution; and

➢ The right to equal protection under Section 2, Article I of the Ohio Constitution.

224.    Plaintiffs are thus entitled to a judgment declaring R.C. § 2315.18(B)(2)

unconstitutional as applied to them

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.    Judgment in their favor and against Defendants in an amount to be determined at trial, but in excess of $75,000.00, including, but not limited to, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest;

B.    An award of attorneys' fees, costs, and expenses under, at least, 42 U.S.C. § 1988;

C.    Declaratory judgment declaring R.C. § 2315.18(B)(2) unconstitutional as applied to them; and

D.    Such other relief as the Court deems just, equitable, and proper.

49

4910-5785-6141, v. 4

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

/s/  *Susan C. Stone*
Susan C. Stone (0064445)
Kristina W. Supler (0080609)
Michael R. Cantu (0095335)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Phone: 216-696-8700; Fax: 216-621-6536
Email: scs@kjk.com; kws@kjk.com;
mrc@kjk.com
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury pursuant to Fed. R. Civ. P. 38.

/s/  *Susan C. Stone*
Susan C. Stone (0064445)

50